No. 14-50046

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
UNITED STATES OF AMERICA

In the Matter of:  AGE REFINING, INCORPORATED,
     Debtor
-----------------------------------------------------
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
     Appellant
v.

ERIC J. MOELLER, Chapter 11 Trustee for AGE Refining, Incorporated
_____

In the Matter of:  AGE REFINING, INCORPORATED,
     Debtor
-----------------------------------------------------
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
     Appellant
v.

CHASE CAPITAL CORPORATION; LIQUIDATING TRUSTEE
RANDOLPH N. OSHEROW,

     Appellees
_____

In the Matter of:  AGE REFINING, INCORPORATED,
     Debtor
-----------------------------------------------------
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
     Appellant

v.

RANDOLPH N. OSHEROW, Chapter 11 Trustee,
     Appellee

**ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION
CONSOLIDATED CIVIL ACTION NO. 5:12-cv-00064-HLH**

**APPELLANT'S REPLY BRIEF**

**MARTIN & DROUGHT, P.C.**
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, Texas  78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com
Michael G. Colvard
State Bar No. 04629200

**Attorneys for Appellant**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Appellants hereby certify the following are interested persons within this

case:

The Official Committee of Unsecured Creditors/Appellant
Represented by:     Michael G. Colvard
                    Martin & Drought, P.C.
                    Bank of America Plaza, 25th Floor
                    300 Convent Street
                    San Antonio, Texas  78205
                    Telephone:  (210) 227-7591 / Facsimile:  (210) 227-7924


Chase Capital Corporation/Appellee
Represented by:     Toby L. Gerber
                    Norton Rose Fulbright
                    2200 Ross Ave., Suite 2800
                    Dallas, TX  75201-2784
                    Telephone:  (214) 855-8000 / Facsimile  (214) 855-8200
                    Steve. A. Pierce
                    Norton Rose Fulbright
                    300 Convent Street, Ste. 2100
                    San Antonio, TX 78205-3792
                    Telephone:  (210) 224-5575 / Facsimile  (210) 270-7205


Randolph N. Osherow, Trustee – Trustee/Appellee
Represented by:     David S. Gragg
                    Steven R. Brook
                    Natalie F. Wilson
                    Langley & Banack, Inc.
                    745 East Mulberry, Suite 900
                    San Antonio, TX 78212
                    Telephone:  (210) 736-6600 / Facsimile:  (210) 735-6889

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to FED. R. APP. P. 34, Appellant suggests that discrepancies between the lower court's findings, and the testimony and evidence introduced at trial can best be considered with oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................... iii

REQUEST FOR ORAL ARGUMENT ............................................................... iv

TABLE OF CONTENTS ................................................................................ v, vi

LIST OF AUTHORITIES ..................................................... vii, viii, ix, x

TABLE OF ABBREVIATIONS ........................................................... xi

I. INTRODUCTION .................................................................................1

II. ARGUMENT ......................................................................................2

    A.  Chase Oversecured/Diminution Claims.................................... 2

    B.  Chase Alleged Oversecured Claim ......................................... 3

    C.  Chase's Diminution Claim....................................................... 9

    D.  Abuse of Discretion/Clear Error ......................................... 10

    E.  Arguments Concerning the AGE Plan ................................. 15

III. SPECIFIC ARGUMENTS-RESPONDING TO APPELLEES' BRIEF . 19

    A.  Waiver of Findings Issues...................................................... 19

    B.  Constitutionally Moot ............................................................ 20

    C.  Waiver of Plan Issues ............................................................ 21

    D.  Working Asset Value ............................................................ 21

    E.  Tank Farm Allocated Value ................................................. 23

    F.  Chase's Erroneous Value Calculations ................................. 23

G.  The District Court's Findings .................................................................. 24

H.  The District Court May Not Make Findings.......................................... 24

I.  Chase does not Dispute Diminution Arguments .................................... 25

J.  Appellees Argue that the Redfish Bay Order is Final............................ 26

**CONCLUSION**..........................................................................................**26**

**CERTIFICATE OF SERVICE** ...........................................................**27**

**CERTIFICATE OF COMPLIANCE** ................................................**29**

# LIST OF AUTHORITIES

## Cases

*Bank of N.Y. Trust Co. N.A. v. Pacific Lumber Co. (In re Scopac),*
   624 F.2d 274, 283 (5th Cir. 2010)..........................................................................2, 9

*Bartee v. Tara Colony Homeowners Assoc. (In re Bartee),*
   212 F.3d 277 (5th Cir. 2000)...................................................................................2

*Clinkenbeard v. Central Southwest Oil Corp.*,
   526 F.2d 649, 651-52 (5th Cir. 1976) ................................................... 25

*Connecticut Gen. Life Inc. Co. v. United Cos. Fin. Corp.,*
*(In re Foster Mortgage Corp.),*
   68 F.3d 914, 917 (5th Cir. 1995).......................................................... 12

*Doe v. Veneman,*
   380 F.3d 807 (5th Cir. 2004) .......................................................... 20, 21

*Factory Mut. Ins. v. Panda Energy Int'l, Inc.*
*(In re Hereford Biofuels, LP)*,
   466 B.R. 841, 860 (Bankr. W.D. Tex. 2012)........................................ 8

*Financial Security Assurance, Inc. v. T-H New Orleans Limited Partnership*
*(In re T-H New Orleans Limited Partnership)*,
   116 F.3d 790, 798 (5th Cir. 1997) ................................... 3, 7, 8, 11, 22

*Hall v. Vance,*
   887 F.2d 1041 (10th Cir. 1989).............................................................24

*In re Allied Properties, LLC*,
   2007 Bankr. LEXIS 2174 (Bankr. S.D. Tex. June, 2007) ............................. 12, 13

*In re Block Shim Development Company-Irving*,
   118 B.R. 453, 454 (N.D. Tex. 1990)..................................................25

*In re Cajun Elec. Power Coop.*,
   119 F.3d 355 (5th Cir. 1997)............................................................ 12

*In re Carpet Ctr. Leasing Co., Inc.*,
   4 F.3d 940, 941 (11th Cir. 1993)............................................................2

*In re Jackson Brewing Co.,*
   624 F.2d 599, 602 (5th Cir. 1980)................................................. 13, 15

*In re Lawrence & Erausquin, Inc.*,
   124 B.R. 37, 38 (Bankr. N.D. Ohio 1990) ........................................ 12

*In re Muncrief,*
   900 F.2d 1220 (8th Cir. 1990)...........................................................24

*In re Moody Nat'l SHS Houston H, LLC,*,
   426 B.R. 667 (Bankr. S.D. Tex 2010) ...............................................17

*In re Pan American General Hospital, LLC,*
   385 B.R. 855, 864 (Bankr. W.D. Tex. 2008)..................................... 3, 7

*In re Save our Springs (S.O.S.) Alliance, Inc.*,
   388 B.R. 202, 222 (Bankr. W.D. Tex. 2008)..................................... 15

*In re T-H New Orleans Limited Partnership*,
   188 B.R. 799, 805 (Bankr. E.D. La. 1995),
   aff'd 106 F.3d 790 (5th Cir. 1997) ............................................... 15, 25

*In re Texas Mortgage Services Corp.*,
   761 F.2d 1068 n9 (5th Cir. 1985)..................................................... 25

*In re Waldron*,
   2006 W. Dist. LEXIS 31411 (S.D. Tex. April, 2006) ....................... 14

*In re Williams*,
   337 F.2d 504, 508 (5th Cir. 2003)......................................... 2, 15, 16

*MacArthur Co. v. Johns-Manville Corp.,*
   837 F.2d 89, 93(2d Cir. 1988)............................................................ 8

*Martin v. Sanderson Transcporation, Inc.*
*(In re Martin)*,
   222 Fed. Appx. 360 (5th Cir. 2007) ..................................................13

*Protective Committee for Independent Stockholders of TMT Trailer*
*Ferry, Inc. v. Anderson,*
 390 U.S. 414, 424-25, 88 S.Ct. 1157 20 L.Ed.2d 1 (1968) ............... 11, 13, 14, 15

*Raleigh v. Ill, Dept. of Revenue,*
 530 U.S. 15, 23, 120 S. Ct. 1951, 147 L.Ed.2d 13 (2000).................................. 17

*Southland Corp. v. Toronto-Dominion*
*(In re Southland, Corp.),*
 160 F.3d 503 (5th Cir. 1998)...................................................................................2

*Swift v. Bank of San Antonio*
*(In re Swift),*
 3 F.3d 929 (5th Cir. 1993)........................................................................................2

*U. S. v. AWECO, Inc.,*
 725 F.2d 293 (5th Cir. 1984) ................................................................................. 13

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*
 108 S.Ct. 626 (1988) ...............................................................................................9

## Statutes

11 U.S.C. § 363 ....................................................................................................... 8

11 U.S.C. § 364 ....................................................................................................... 2

11 U.S.C. § 503(a) ........................................................................................... 2, 16

11 U.S.C. § 506(a) .................................................................................... 1, 20, 21

11 U.S.C. § 506(b) ................................................... 1, 2, 3 15, 16, 17, 18, 19, 20

11 U.S.C. § 507(b) ........................................................................................... 2, 16

11 U.S.C. § 1124(2) ............................................................................................. 19

11 U.S.C. § 1129(a) ................................................................................... 15, 16, 21

11 U.S.C. § 1129(a)(1)..................................................................................... 16, 21

11 U.S.C. § 1129(a)(7)............................................................................... 15, 16, 21

11 U.S.C. § 1129(a)(10)............................................................................... 18

11 U.S.C. § 1129(b) ................................................................................... 16, 21

11 U.S.C. § 1129(b)(1)................................................................................. 18

11 U.S.C. § 1129(b)(2)............................................................................... 16, 21

11 U.S.C. § 1129(b)(7)................................................................................. 18

**Rules**

FED. R. APP. P. 34........................................................................................ iv

FED. R. BANKR. P. 8009(a)(3) ..................................................................1

FED. R. BANKR. P. 9019 .............................................................................1

## TABLE OF ABBREVIATIONS

**Abbreviation**                                                **Description**


TR                                                                    Transcripts
Within proceeding styled *AGE Refining, Inc.* before the
Bankruptcy Court Case No. 10-50501-LMC


Dist. Doc. No.                                              Docket Number
Within Appeal before the
District Court Consolidated Civil Action No. 5:12-cv-00064-HLH


Bankr. Doc. No.                                            Docket Number
Within proceeding styled *AGE Refining, Inc.* before the
Bankruptcy Court Case No. 10-50501-LMC


Committee Tr. Ex.                                    Committee Trial Exhibit
Within proceeding styled *AGE Refining, Inc.* before the
Bankruptcy Court Case No. 10-50501-LMC


CC Tr. Ex.                                                  Chase Trial Exhibit
Within proceeding styled *AGE Refining, Inc.* before the
Bankruptcy Court Case No. 10-50501-LMC


ROA.14-50046._____                         Electronic Record on Appeal
Within Appeal before the
District Court Consolidated Civil Action No. 5:12-cv-00064-HLH


USCA5 _____.                                          Record on Appeal
Within proceeding styled *AGE Refining, Inc.* before the
Bankruptcy Court Case No. 10-50501-LMC

## <u>REPLY BRIEF OF APPELLANT</u>

TO THE HONORABLE UNITED STATES CIRCUIT COURT OF APPEALS:

NOW COMES the Official Committee of Unsecured Creditors ("Committee"/"Appellant"), for AGE Refining, Inc. ("AGE"), to file its Reply Brief under R. 8009(a)(3) Fed. R. Bankr. P. ("Reply") to the Joint Brief of Appellees ("Appellees' Brief"), Chase Capital Corporation ("Chase") and Randolph N. Osherow, Liquidating Trustee, ("Trustee") ("Appellees").

## I.    <u>INTRODUCTION</u>

1.1    This appeal of the Joint Motion to Approve the Compromise under Rule 9019[1] ("Chase Settlement"), the Order Denying the Committee's Objection to the Chase Claim[2] ("Claim Objection Order") and the Order Regarding the Application to Value the Secured Claim of Chase under Bankruptcy Code § 506(a) and (b)[3] ("Valuation Order") together with the Findings of Fact Conclusions of Law and Order Confirming Fourth Amended Chapter 11 Plan of Reorganization[4] ("Confirmation Order") allowing Chase to receive $5-$7 Million from unencumbered proceeds

---

[1] Bankr. Doc. No. 1362 – Order Approving Compromise (the "Chase Settlement Order") (ROA.14-50046.1397) (USCA5.613).
[2] Bankr. Doc. No. 1361 – Order Denying Committee's Objection to the Claims of Chase Capital Corporation (the "Claim Objection Order") (ROA.14-50046.1394) (USCA5.612).
[3] Bankr. Doc. No. 1358 – Order Regarding the Application to Value the Secured Claim of Chase under Bankruptcy Code § 506(a) and (b) (the "Valuation Order") (ROA.14-50046.1395-1396) (USCA5.608-609).
[4] Bankr. Doc. No. 1460 – Findings of Fact Conclusions of Law and Order Confirming Fourth Amended Chapter 11 Plan of Reorganization (the "Plan Order") (ROA.14-50046.806-838) (USCA5.1117-1149).

earmarked for unsecured creditors. Chase's settled claims allege an oversecured status under 11 U.S.C. § 506(b), claiming post-petition interest of $6 Million and $14 Million diminution damages. But Chase was neither oversecured and suffered no collateral diminution making the settlement and Plan inequitable. Chase benefited by over $25 Million in enhanced collateral value, yet pursues efforts to collect $5 - $7 Million in unencumbered proceeds. Similarly, to *Swift v. Bank of San Antonio (In re Swift),* 3 F.3d 929 (5th Cir. 1993), "when a pig becomes a hog it is time to be slaughtered."

## II.     ARGUMENT

## A.  Chase Oversecured/Diminution Claims:

2.1     The Settlement[5] intended to resolve Chase's valuation and post-petition interest claims[6] alleging oversecured status under § 506(b) and diminution claims under 11 U.S.C. §§ 364 and 503(a).[7] Oversecured claims entitles post-petition interest where collateral values exceed prepetition debt.[8] Diminution claims – assume lost collateral value – allowing administrative claims.[9]  Chase alleged a $6 Million

---

[5] Bankr. Doc. No. 1362 – Chase Settlement Order – Ex. A – Settlement ("Settlement") (ROA.14-50046.1394) (USCA5.613);

[6] Bankr. Doc. No. 1100 – Motion to Compel Payment of Principal, Interest and Other Charges ("Chase Motion to Compel") (USCA5.38-61), Claim Doc. No. 161 and 162 – Chase Oversecured Claim, and Claim Doc. No. 162 – Chase Diminution Claim.

[7] Bankr. Doc. No. 1100 – Chase Motion to Compel (USCA5.38-61).

[8] 11 U.S.C. § 506(b); *Bartee v. Tara Colony Homeowners Assoc. (In re Bartee),* 212 F.3d 277 (5th Cir. 2000).

[9] *Bank of N.Y. Trust Co., NA v. Pacific Lumber Co. (In re Scopac),* 624 F.2d 274, 283 (5th Cir. 2010); citing, *In re Carpet Ctr. Leasing, Co., Inc.,* 4 F.3d. 940, 941 (11th Cir. 1993).

oversecured and $14 Million diminution claim.[10]  Chase has no rights to either where confirmed Chase collateral sales [11] netted less in sales proceeds than Chase's prepetition debt; and, no "diminution" where Chase's collateral increased by over $25 Million.[12]

## B.    Chase's alleged Oversecured Claim.

2.2    Chase is not oversecured.  Fifth Circuit precedent determines collateral value upon sale or disposition.  *Financial Security Assurance, Inc. v. T-H New Orleans Limited Partnership (In re T-H New Orleans Limited Partnership),* 116 F.3d 790, 798 (5thCir. 1997); *In re Pan American General Hospital, LLC,* 385 B.R. 855, 864 (Bankr. W.D. Tex. 2008).  Chase's value was established by:

    i.    <u>Refinery Sale</u> – April 14, 2011, producing $41 Million for fixed refinery assets minus unencumbered proceeds;[13]

    ii.    <u>Working Capital Sale</u> – $4.8 Million within the refinery sale – fixing working capital value on April 19, 2011, at $4.8 Million subject to outstanding J.P. Morgan liens;[14]

---

[10] Bankr. Doc. No. 1362 – Chase Settlement Order. (ROA.14-50046.1397) (USCA5.613).

[11] Bankr. Doc. No. 913 – Order (A) Authorizing and Approving the Sale of Certain of the Debtor's Assets Free and Clear of all Liens (the "Refinery Sale Order") (USCA5.1506-1593) – selling refinery assets for $41 Million.

[12] CC Tr Ex. 16 – Affidavit - Michael Schmidt; Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593); CC Tr. Exs. 24 – 44; Monthly Operating Reports filed 2010 Bankr. Doc. No. 148 – April , 2011 Bankr. Doc. No. 1682.

[13] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593) – sold refinery assets including unencumbered, Elmendorf Tank Farm (the "Tank Farm") and adjacent real property (the "Adjacent Real Property") for $41 Million.

[14] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593).

iii.   <u>Insurance Settlement</u> – Producing $2.35 Million on November 30, 2011 – for $5.2 Million insurance claims;[15] and,

iv.   <u>Gonzalez Settlement Order</u> – paying $0 under the Gonzalez Settlement, for Chase's released ATI claims.[16/17]

2.3    The Refinery Sale constitutes the only sale of Chase collateral prior to the Settlement hearing – fixing value at $35-$37 Million, $10-$12 Million less than the Settlement payments.  AGE operations ceased following the Refinery Sale leaving the Redfish Bay Terminal, the insurance claims and the Gonzalez claims.[18/19]  Refinery Sale proceeds totaled $41 Million for the refinery plus unencumbered assets (the Tank Farm and Adjacent Real Property); and, $4.8 Million for the working capital[20] – subject to J.P. Morgan debt.[21]  The resulting Chase collateral value – determined by deducting the Tank Farm proceeds ($1.331 FMV or $4 Million Allocated Value) and the Adjacent Property ($1.949 Million) nets $35 - $37 Million.[22]

---

[15] Bankr. Doc. No. 1422 – Insurance Settlement Order (USCA5.2242-2245) – AGE insurance claims resulted from fire damage and business interruption following the May 2010 post-petition explosion to the refinery.

[16] Bankr. Doc. No. 1456 – Gonzalez Settlement Order – settling avoidance, fiduciary duty claims against AGE owners (ROA.14.50046.1541-1556).

[17] Dist. Doc. No. 30 - Appellant's Reply Brief - Appendix Tab 1 – Summary – Chase Collateral Value (ROA.14.50046.1178).

[18] Bankr. Doc. No. 909 – Affidavit of Eric J. Moeller, Trustee  – April 14, 2011.

[19] Bankr. Doc. No. 1426, TR October 27, 2011, pp. 66-70, 179.

[20] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593).

[21] Bankr. Doc. No. 113 –  Amended Final Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders ("Cash Collateral Order") (USCA5.306-350).

[22] Bankr. Doc. No. 913 – Refinery Sale Order  (USCA5.1506-1593).  Dist. Doc. No. 30 Appellant's Reply Brief - Appendix Tab 2 – Analysis of Chase/Trustee v. Actual Value Resulting from

2.4     Appellees' ignored Fifth Circuit standards fixing collateral value and attempt to inflate Chase's interest through accounting gymnastics.[23/24]  Chase/Trustee disregard the Insurance Settlement Order[25] settling for $2.35 Million, $2.85 Million more than Chase's claimed value.[26]  Chase's claims to $4.8 Million in working capital and $4.2 Million cash,[27] disregard J.P. Morgan's $11,817,586.26 first lien debt,[28] negating any Chase value contribution.  Chase credits $1.7 Million from ATI receivables, overlooking Chase's ATI release for $0.[29]

2.5     Comparing Chase's claims with actual sale/dispositions reveal:

| Chase Claimed Value | | Actual Sale/Disposition Results | Net Value to Chase |
|---|---|---|---|
| i. | Insurance settlement: | $5.2 Million/$2.35 Million – per Insurance Settlement Order[30] | $2.35 M |
| ii. | ATI Receivable:  $1.4 Million | $0 – Chase release ATI Claims per Gonzalez Settlement Order[31] | $0 |
| iii. | Working Capital:  $4.8 Million | $4.8 Million – subject to | $0 |

Sale/Disposition of Collateral (ROA.14.50046.1180).

[23] Appellees' 5th Cir. Brief, p. 18 ¶ II.T.  Chase represents the value of insurance/tort claims to be $5.2 Million and ATI receivables at $1.7 Million, asserts rights to $4.8 Million in working capital, and $4.2 Million in cash.

[24] Appellee's 5th Cir. Brief, p. 18 ¶ II.T.

[25] Bankr. Doc. No. 1422 – Insurance Settlement Order (USCA5.2242-2245).

[26] Appellees' Brief, p. 5 ¶ IV.A.

[27] Appellees' Brief, p. 18 ¶ II.T.

[28]  Bankr. Doc. No. 113 – Cash Collateral Order (USCA5.306-350).

[29] Bankr. Doc. No. 1456 – Gonzalez Settlement Order – Exhibit A – Release (ROA.14.50046.1541-1556).

[30] Bankr. Doc. No. 1422 – Insurance Settlement Order (USCA5.2242-2245).

[31] Bankr. Doc. No. 1456 – Gonzalez Settlement Order (ROA.14.50046.1541-1556) (USCA5.2360-2375).

first lien of J.P. Morgan
of $11,817,586.26[32]

| iv. | Cash: | $4.2 Million | $5.6 Million on deposit on April 14,2011 subject to J.P. Morgan lien[33] | $0 |

2.6     Chase admits an undersecured status.[34]  Chase valued AGE loans initially writing down of $10 Million on Chase's prepetition debt[35] then another $4 Million.[36] Following the AGE terminal explosion, Chase reassigned a loan "carry" value of $16.7 Million – $25 Million below Chase's debt.[37/38]  Prior to the refinery sale, Chase listed value at $23 Million.[39]  Following the refinery sale on April 18, 2011, Chase determined "collateral value through deducting the unencumbered assets from net sales proceeds," resulting in $38.8 Million Chase collateral value, recognizing a $1.2 Million deficiency.[40]  Chase's counsel confirmed Chase's "undersecured" status and lack claim to unencumbered assets.[41]  After the Redfish Bay sale on May 20, 2011 Chase realigned its perspective,[42] directing Redfish Bay proceeds to J.P. Morgan debt

---

[32] Committee Tr. Exs. 15 and 37.  Emails confirming J.P. Morgan debt.
[33] Bankr. Doc. No. 113 – Cash Collateral Order (USCA5.306-350).
[34] Committee Tr. Ex. 22 – 25, 33 – 35 Chase's memorandum fixing value between $16.7 Million and $34 Million – acknowledged deficiency of $1.2 Million on April 18, 2011 – four days after the Refinery Sale (Dist. Doc. No. 30 – Appendix Tab 1 - Chase Representations Regarding Collateral Value) (ROA.14.50046.1178).
[35] Committee Tr. Ex. 22 – Chase Meeting, March 25, 2010.
[36] Committee Tr. Ex. 23 – Chase Meeting, April 1, 2010.
[37] Comm. Tr. Ex. 24 – Chase Meeting, December 17, 2010.
[38] Comm. Tr. Ex. 33 – Chase Memorandum, January 1, 2011.
[39] Comm. Tr. Ex. 25 – Chase Memorandum, March 16, 2011.
[40] Comm. Tr. Ex. 35 – Chase Memorandum, April 18, 2011.
[41] Comm. Tr. EX. 39 – Transcript, January 28, 2011, p. 68, lns. 17-25 and p. 20, lns. 15-18.
[42] Bankr. Doc. No. 978, Redfish Bay Sale Order (USCA5.1657-1696).

and crediting working capital proceeds to Chase value.[43]

2.7    Chase's argument fails:

i.    <u>Case precedent determines collateral value upon sale or disposition:</u>[44]   AGE working capital assets sold with the refinery sale on April 14, 2011, closed on April 19, 2011, subject to the J.P. Morgan debt of $11.817 Million.[45]   The Trustee transferred and NuStar took title to sold assets including working capital upon closing.[46]   Sale proceeds include a base purchase price - $41 Million, plus $4.8 Million in working capital.  Closing occurred on April 19, 2011.[47]   Working capital proceeds of $4.8 Million were subject to J.P. Morgan $11.8 Million debt upon closing contributing no value to Chase.  Chase agreed, stating "the only date . . .upon which to measure value is as of the sale."[48]

ii.    <u>Case law provides no basis to alter sale value:</u>   Chase/Trustee cite no authority altering sales values by changing the closing date.[49]

Chase's manipulation of valuation – altering sale/disposition value

---

[43] Appellees' Brief, p. 18 ¶ II.
[44] *T-H New Orleans, Id.*
[45] Committee Tr. Exs. 12 and 15.
[46] Bankr. Doc. No. 913 – Refinery Sale Order, p. 14 ¶ 4 (USCA5.1506-1593).
[47] Bankr. Doc. No. 921 – Trustee Notice of Closing of Sale of Refinery (USCA5.1594-1595).
[48] Bankr. Doc. No. 1426 – TR October 27, 2011, p. 141 lns. 1-5.
[49] *Financial Security Assurance, Inc. v. T-H New Orleans Limited Partnership (In re T-H New Orleans Limited Partnership),* 116 F.3d 790, 798 (5thCir. 1997); *In re Pan American General Hospital, LLC,* 385 B.R. 855, 864 (Bankr. W.D. Tex. 2008).

– to results following the Redfish Bay sale – relies upon payment of J.P. Morgan lien after May 20, 2011 release of working capital crediting Chase collateral value.  Chase disregards the closing date on April 19, 2011 – at which time J.P. Morgan lien attached to the working capital proceeds – and funds from working capital paid to J.P. Morgan prior to May 20, 2011.[50]

    iii.    <u>J.P. Morgan lien attaches to working capital proceeds:</u>  The Refinery Sale Order – attaches J.P. Morgan liens to working capital proceeds[51] directing payment of J.P. Morgan liens.[52]

    iv.    <u>Chase violates the Cash Collateral Order:</u>  The Cash Collateral Order[53] recognizes the first lien of J.P. Morgan, placing all cash under the dominion/control of J.P. Morgan[54] – directing all cash to be applied to J.P. Morgan debt.[55]  AGE account balance exceeded $12 Million between April 20 and May 5, 2011, in addition to escrow deposits exceeding $8.51 Million.[56]  $5.51 Million of

---

[50] Bankr. Doc. No. 921 – Trustee Notice of Closing of Sale of Refinery (USCA5.1594-1595).

[51] Bankr. Doc. No. 913 – Refinery Sale Order, p. 10  (USCA5.1506-1593), authorities providing that liens attach to sale proceeds.  11 U.S.C. 363, *Factory Mut. Ins. v. Panda Energy Int'l, Inc. (In re Hereford Biofuels, LP),* 466 B.R. 841, 860 (Bankr. W.D. Tex. 2012); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 93 (2d Cir. 1988).

[52] Bankr. Doc. No. 113 – Cash Collateral Order (USCA5.306-350), p. 10 ¶ 21; Bankr. Doc. No. 913 – Refinery Sale Order, p. 10 ¶ R (USCA5.1506-1593)

[53] Bankr. Doc. No. 113 – Cash Collateral Order (USCA5.306-350).

[54] Cash Collateral Order, p. 9 ¶ 20, p. 10 ¶ 21, p. 13 ¶ 33, p, 14 ¶¶ 35-38 (USCA5.306-350).

[55] Bankr. Doc. No. 1426, TR October 27, 2011 p. 243 lns. 2-5.

[56] Committee Tr. Ex. 12 – AGE Cash Chart.

escrowed funds were released on April 28, 2011.[57]  On May 6,

2011 $7 Million was paid to J.P. Morgan[58] – leaving J.P. Morgan

debt of $4.7 Million attaching to AGE deposits of $5 Million to be

applied to J.P. Morgan debt per Refinery Sale and Cash Collateral

Orders.

## C.     Chase's Diminution Claim.

2.8     Chase's "diminution" claim of $14.7 Million[59] is based upon a "failure of

adequate protection"[60] guarding against collateral loss.[61]  But no loss occurred.  The

refinery sale evidences Chase's enhanced collateral position, rising from $16 Million

to $41 Million.  Michael Schmidt, the marketing agent testified that earlier sales

efforts in April 2010 generated offers approximating $16 Million.[62]  Sale efforts were

curtailed when the refinery exploded in May 2010.  In April 2011, following repairs,

the refinery assets were sold for $41 Million, an enhancement of $25 Million.[63]  Chase

admits that refinery values increased from $16.7 Million in 2010 to $39 Million in

April 2011.[64]  AGE working capital assets also increased from $31.5 Million in

---

[57] Bankr. Doc. No. 1019 – Trustee's Notice of Finalization of Working Capital Adjustment, p. 2
¶ 2; Committee Tr. Ex. 12 – AGE Cash Chart.
[58] Committee Tr. Ex. 15 – Email confirming $11.8 Million debt.
[59] Appellees' Brief, p. 15 ¶ II.Q.34.
[60] *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 108 S.Ct. 626 (1988).
[61] *Bank of N.Y. Trust Co., NA v. Pacific Lumber Co. (In re Scopac),* 624 F.2d 274, 283 (5th Cir. 2010).
[62] Chase Tr Ex. 16 - Affidavit of Michael Schmidt, p. 3 ¶ 5 and p. 5 ¶ 11 – regarding increased purchase price above market sale.  Bankr. Doc. No. 909, Affidavit of Eric Moeller.
[63] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593).
[64] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593).

February 2010, to $42.9 Million by April 2011.[65]   Chase has no diminutive claim,

produced no diminution evidence, and makes no diminution arguments.

2.9   The Refinery Sale Order, fixing Chase collateral value at $35-$37

Million and enhanced collateral value dispel all oversecured and diminution claims –

contradicting the "oversecured" and "fair and equitable" findings of the Court –

revealing that the Chase Settlement/Plan proposing overpayments of $5-$7 Million,[66]

is not in the best interest of creditors.

**D.  Abuse of discretion/clear error.**

2.10   Chase/Trustee references a deference afforded the Bankruptcy Court,

whose decisions not be overturned unless manifestly unjust and a clear abuse of

discretion.[67]   Legal standards are not disputed, but the record reveal clear abuse and

manifest injustice where:

> i.     The Refinery Sale occurring prior to the Settlement capped Chase
>
> value at $35 - $37 Million – substantially less than $45 Million
>
> under the Settlement.[68]   Chase's insurance collateral later

---

[65] Compare Bankr. Doc. No. 152 – Schedules, Chase Tr. Ex. 24 – Monthly Operating Report April 2010. Dist. Doc. No. 30 – Appellant's Reply Brief - Appendix Tab 3 – AGE Working Capital Asset Value Range (ROA.14.50046.1182).

[66] Bankr. Doc. No. 1367 – TR November 1, 2011, pp. 22-23, lns. 1-9 and 22-25.

[67] Appellees' Brief, p. 28 – 31 ¶ V.A.- D., p. 29 ¶ IV.B.

[68] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593).

produced $2.35 Million;[69] and, (b) Chase released ATI receivables

for $0.[70]  Proving Chase oversecured claims to be meritless;

    ii.        Refinery values increased by $25 Million and working capital by

                $10 Million – disproving diminution claim;

    iii.        Chase admits an undersecured status; and,

    iv.        Chase reallocation of working capital proceeds, defies case law,

                the Refinery Sale/Cash Collateral Orders and J.P. Morgan liens.

The Bankruptcy Court's two page findings – touting settlement – ignores convincing

evidence undermining Chase's substantive claims and demonstrating no diminution

but rather harm to creditors.  Judge Akard erred deeming Chase "oversecured" and

disregarding sales values, without providing appropriate factual analysis or valuation

criteria.[71]  He ignored Fifth Circuit "fair and equitable" settlement requirements[72] and

neglected direct harm to unsecured, redirecting $5 - $7 Million in unencumbered

proceeds to Chase.  Judge Akard disregarded established collateral value concepts

under *T-H New Orleans*, ignored expert valuations and determined Chase's internal

valuations irrelevant.[73]  He deemed value and claims objections moot following

---

[69] Bankr. Doc. No. 1422 - Insurance Settlement Order (USCA5.2242-2245).

[70] Bankr. Doc. No. 1456 - Gonzalez Settlement Order (ROA.14.50046.1541-1556).

[71] Bankr. Doc. No. 1367 – TR November 1, 2011, p. 22, lns. 1-9; p. 23, lns. 22-25.

[72] *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 88 S.Ct. 1157 (1988).

[73] Bankr. Doc. No. 1426 - TR, October 27, 2011, p. 29, lns. 17-19 – Judge Akard failed to see relevance of Chase valuations; or – Chase "mark down" of its loan (TR pp. 223-224 lns. 16-18 and 4-16); holding book value was not relevant to Chase oversecured claim (TR p. 233 lns. 1-5); Chase's

closing arguments and approved the Settlement – agreeing with Chase's unsubstantiated oversecured and diminution claims, reasoning that Trustee needs for cash overrides court orders directing use of cash to pay J.P. Morgan.[74]  He was wrong – Chase is neither oversecured nor are diminution claims justified.  He found the Plan overpaying Chase to be fair and that Chase's fully paid claims impaired.   Judge Akard's conclusions and findings are manifestly erroneous constituting a clear abuse of discretion.

2.11   The District Court faired no better, ignoring the Committee's value and claim objections, focusing upon general settlement concepts while making unwarranted "findings."  The District Court – like the Bankruptcy Court – ignored value standards, claims objections and Chase burden of proof – erroneously allocating $4.8 Million in working capital proceeds to Chase.[75]  The District Court avoided issues on appeal and determined value using settlement standards.

2.12   Settlement standards require consideration of the best interest of creditors with proper difference to their reasonable views.[76]  Trustee assumes the burden to establish a fair and equitable compromise.[77]  While approval is discretionary, the court

---

admissions of a $1.2 Million deficiency constituted prognostication (TR p. 237 lns. 6-25). Application of funds prior to Redfish Bay Sale mere argument (TR p. 245 lns. 1-8).

[74] Bankr. Doc. No. 1367 - TR. November 1, 2011 pp. 31-32.

[75] Memorandum, p. 11 n. 7 (ROA.14-50046.1208).

[76] *In re Cajun Electric Power Coop,* 119 F.3d 355 (5th Cir. 1997) citing, *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.),* 68 F.3d 914, 917 (5th Cir. 1995).

[77] *In re Allied Properties, LLC,* 2007 Bankr. LEXIS 2174 (Bankr. S.D. Tex. June, 2007); citing, *In re Lawrence & Erausquin, Inc.,* 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990).

must be informed of all relevant facts and must make an independent determination whether the settlement is fair and reasonable, not mere rubberstamping.[78] In *Allied Properties*, Judge Isgur denied the settlement because (i) trustee misplaced focus on recovering claims; (ii) Trustee offered no evidence of claims value; and, (iii) the settlement offered no material benefit to creditors.[79] Settlements are disallowed where approval omits a reasoned analysis of probable success.[80] The Supreme Court requires reviewing courts to make well reasoned conclusions after comprehensive consideration of relevant facts, overturning settlements with insufficient evaluations.[81]

2.13   The Bankruptcy Court failed to indicate consideration of relevant factors, when making its boiler plate findings.[82] His limited findings hinged ultimate success upon threats of appeal, finding of "oversecured status" without analytical foundation – and "all other factors" resting upon the closing of the estate[83] There was no evaluation

---

[78] *Allied Properties,* at *8, citing, *In re Waldron,* 2006 W. Dist. LEXIS 31411 (S.D. Tex. April, 2006) and, *U.S. v. AWECO, Inc.,* 725 F.2d 293 (5th Circ. 1984), the duty of the bankruptcy judge to reach an intelligent, objective and educated valuation of settlements cannot be carried out absent sufficient factual background, quoting, *In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980).

[79] *Id.* at *10.

[80] *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88 S.Ct. 1157 20 L.Ed.2d 1 (1968), settlement was disallowed due to prospects of substantial recovery compared to small dividend to creditors. *TMT Trailer* at 434.

[81] *Id.*

[82] *TMT Trailer* at 434.

[83] Bankr. Doc. No. 1367 - TR, November 1, 2011, p. 31 lns. 6-25 and p. 32 lns. 1-10. Following the Supreme Court's decision in *TMT Trailer,* the Fifth Circuit requires appellate courts to assure that the compromise is fair and equitable and in the best interest of the estate, *Martin v. Sanderson Transportation, Inc. (In re Martin),* 222 Fed. Appx. 360 (5th Cir. 2007) citing *In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980); *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25, 88 S.Ct. 1157 20 L.Ed.2d 1 (1968). The bankruptcy court is required to make findings on the probability of success in litigation. . .(2) the

of strengths of Chase's claims, no analysis of unsecureds' interest, no reasoned evidence explaining valuation. Findings of an "oversecured" status were made without reference to proceeds generated by sale or other useful data.[84]

2.14   The District Court contends that evidence would support a "informed and intelligent decision," finding Chase's collateral was worth more than $40 Million,[85] but demonstrating a lack of comprehension by crediting $4.8 Million working capital assets to Chase value, disregarding J.P. Morgan's $11.8 Million debt, incorrectly valuing Chase's collateral at $39.858 or $42.55 Million.[86] The District Court's attempts to reconcile Judge Akard's findings, misallocates working capital proceeds – disregarded the Cash Collateral Order/Refinery Sale Order and J.P. Morgan's $11.8 Million debt. The District Court's reference to the complexity, duration and expense of litigation relied upon an unfounded $14 million diminution claim reasoning that the Bankruptcy Court "weighed (the diminution claim) heavily in favor of settlement approval"[87] failing to understand that no diminution claim exists.

2.15   Neither the Bankruptcy Court nor the District Court attempted to analyze Chase's $14 Million diminution claim. Neither the Bankruptcy Court nor the District Court conducted a fair assessment of the settlement and provided no explanation of

complexity and duration of the litigation, and any attendant expense and, (3) all factors on the wisdom of compromise. *TMT Trailer,* at 424-425.
[84] Bankr. Doc. No. 1367 - TR. November 1, 2011, p. 31.
[85] Memorandum, p. 10 ¶ III.B.i (ROA.14-50046.1207).
[86] Memorandum, pp. 10-11 (ROA.14-50046.1207-1208). Finding that J.P. Morgan was paid.
[87] Dist. Doc. No. 33 - Memorandum, p. 14 (ROA.14-50046.1211).

the strengths and weaknesses of Chase's claims.  Neither Court reasoned how the

Settlement, taking $5-$7 Million from unsecureds was fair and equitable.  Similarly to

*TMT Trailer* – there is no indication that settlement conclusions were based on an

educated estimate of the complexity, expense and likely duration of the litigation.

Reliance upon unwarranted oversecured and diminution claims was clearly erroneous.

**E.  Arguments Concerning the AGE Plan.**

2.16    A plan may only be confirmed when all the requirements of 11 U.S.C. §

1129(a) are satisfied, confirmed by the Fifth Circuit:

> The bankruptcy court must hold an evidentiary hearing in rulings
> on confirmation. At this hearing, in addition to the considerations
> of objections raised by creditors, the court has a mandatory
> independent duty to determine whether the plan has met all the
> requirements necessary for confirmation.

*In re Williams*, 337 F.2d 504,508 (5th Cir. 2003); *In re T-H New Orleans*

*Limited Partnership,* 188 B.R. 799, 805 (Bankr. E.D. La. 1995), aff'd

106 F.3d 790 (5th Cir. 1997); *See also, In re Save our Springs (S.O.S.)*

*Alliance, Inc.*, 388 B.R. 202, 222 (Bankr. W.D. Tex. 2008).

2.17    Trustee/Chase argue that the Committee failed to raises 506(b) issues or

issues under § 1129(a)(7).[88]  The Committee objections and hearing transcripts prove

otherwise, asserting objections to Chase's secured status,[89] Chase's impaired status

---

[88] Appellees' Brief, p. 45 ¶ VII.D.
[89] Bankr. Doc. No. 1526 - TR. Dec. 9, 2011, AGE Plan TR. p. 43-46.

and fair and equitable issues.[90]  The Committee's District Court brief references plan objections under §§ 1129(a)(1), (a)(7) and (b)(2), on fairness requirements, to Chase impaired status and voting issues.[91]  The objections raised §§ 1129(a) and (b) questions – Chase's overpayment and detriment to unsecured creditors.[92]  All evidence and testimony from the Settlement hearing was incorporated by stipulation.[93] Even without no objections, the Bankruptcy Court's duty required an independent evaluation of § 1129(a) requirements.[94]

2.18  Chase was fully paid prior to confirmation,[95] leaving only Chase Settlement rights.  Chase and Trustee agreed that Chase rights were those under the Settlement[96] replacing Chase's § 506(b) claims.  Chase settled rights under §§ 503(a) and 507(b) are not impaired claims entitled to vote.

2.19  The Third Amended Plan (the "Plan")[97] classified "administrative claims" under Class 1, as non-voting and unimpaired.[98]  J.P. Morgan's claim was designated unimpaired, Class 1.[99]  J.P. Morgan's prepetition claims were paid leaving

---

[90] Bankr. Doc. No. 1526 - TR. Dec. 9, 2011, Plan TR. p. 47 lns. 3-5.

[91] Dist. Doc. No. 28 - Committee's Brief, p. 1-2 ¶ III, pp. 8-9 ¶¶ 6.4 and 6.5.

[92] Bankr. Doc. No. 1526 – TR. December 9, 2011, pp 43-45.

[93] Bankr. Doc. No. 1526 – TR December 9, 2011, pp. 43-45.

[94] *In re Williams, id.* (case cite omitted).

[95] Bankr. Doc. No. 1109 – Chase Payment Order – authorizes payment of the remaining balance of Chase prepetition claim without prejudice to the Committee's and/or creditors rights to challenge collateral value and claim objections.

[96] Appellees' Brief, p. 37 - 38 ¶ VII – the settlement resolved the § 506(b) claim..

[97] Bankr. Doc. No. 1395 - Third Amended Plan (USCA5.2037-2084).

[98] Bankr. Doc. No. 1459 – AGE Plan, p. 22 ¶ 3.2(a).

[99] Bankr. Doc. No. 1459 – AGE Plan, p. 22 ¶ 3.2(b).

unfunded post-petition letters of credit.[100]  Chase was not classified under Class 1, but

rather as "impaired Class 3 secured claim," even though its prepetition claim like J.P.

Morgan's, was paid and its § 506(b) claim settled.

2.20  The Plan contained no approving class.[101]  Where no impaired class

favors confirmation – a plan fails.[102]  Judge Akard's findings – determining that at

least one class of impaired creditors voted for confirmation and the District Court's

analysis holding Chase to be impaired, are erroneous[103] - where Chase the sole

creditor within the only class favoring confirmation, was not impaired.

2.21  The Trustee and Chase defend Chase's impairment arguing the

$200,000.00 payment was delayed, that post-confirmation interest was not paid and

because the Plan released Chase ATI receivables.[104]  Impairment occurs through an

alteration of legal, equitable or contractual rights under the Settlement.[105]  Impairment

is determined as a matter of law upon consideration of claimants' rights under state

law.[106]  The Settlement requires Trustee – with Chase's cooperation – to pay Chase

$200,000.00, specifying no payment date or default rights or interest.[107]  Following

---

[100] Bankr. Doc. No. 1459 – AGE Plan, p. 22 ¶ 3.2(b).
[101] Bankr. Doc. No. 1448 – Ballot Summary from Trustee's Third Amended Chapter 11 Plan (USCA5.2287-2304).
[102] 11 U.S.C. § 1129(a)(10).
[103] Bankr. Doc. No. 1460 - Order Confirming AGE Plan, p. 5 ¶ F (ROA.14-50046.810).  Dist. Doc. No. 33 - Memorandum, pp. 14-19 (ROA.14-50046.1211-1216).
[104] Appellees' Brief, p. 39-40 ¶ VII.
[105] *In re Moody Nat'l SHS Houston H, LLC,* 426 B.R. 667 (Bankr. S.D. Tex. 2010).
[106] *Moody* at 671, citing, *Raleigh v. Ill. Dept. of Revenue,* 530 U.S. 15, 23, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).
[107] CC Tr Ex. 47 – Exhibit A to Joint Motion of Chapter 11 Trustee and Chase Capital Corporation

approval of the Settlement:

    i.    $3.4 Million within AGE accounts were controlled by Chase.[108]

    ii.    The Plan filed on November 15, 2011, stating that $200,000.00 was paid and incorporates the Settlement.[109]

    iii.    Chase officer, Patrick McCarthy, administered AGE accounts – requiring all AGE cash to be applied to bank debt.[110]

    iv.    Ballots were cast December 5, 2011 with Chase the sole Class 3 creditor voting for confirmation.[111]

    v.    Trustee attested:  the Settlement was precisely incorporated within the Plan, cures no defaults, Class 3 is impaired where Chase receives less than 100% of its secured claim.[112]

    vi.    The Committee objections dated December 7, 2011,[113] argued Chase is excessively paid violating 11 U.S.C. § 506(b), the Plan is not fair under 11 U.S.C. § 1129(b)(1), and Chase is not impaired under § 1129(b)(7).

    vii.    Trustee filed the "Final" Plan on December 9, 2011 – hours prior

---

to Approve Compromise and Settlement Agreement – Bankr. Doc. No. 1251 ("Settlement").
[108] CC Tr Ex. 43, AGE Assets/Liability Summary.
[109] Bankr. Doc. No. 1380 – Third Plan, pp. 23-25 ¶ 3.3(a) (USCA 5.710-755).
[110] Bankr. Doc. No. 113 – Cash Collateral Order, pp. 14-15 ¶¶ 35-38 (USCA5.306-350).
[111] Bankr. Doc. No. 1448 – Ballot Summary (USCA5.2287-2304).
[112] Bankr. Doc. No. 909 – Affidavit and Proffer of Direct Testimony of Eric J. Moeller – April 14, 2011.
[113] Bankr. Doc. Nos. 1438 and 1442 ("Plan Objection") (USCA5.2258-2266).

to the hearing – paying Chase $200,000.00 after confirmation.

2.22    The Settlement was incorporated to the Plan.[114]  Chase's rights were restricted to the Settlement, providing no default rights.  Chase argues that delay in payment caused impairment.[115]  The Settlement conditions payment upon ". . .cooperation of Chase. . . ."  Chase was in control of AGE accounts.[116]  Delays were controlled by Chase.[117]  Impairment cannot exist where the "defaulted" party controls the alleged impairment.

2.23    Chase asserts impairment occurred by failure to pay post-petition interest and because the Plan released ATI claims.[118]  Neither are accurate.  The Settlement resolved Chase's rights under § 506(b) providing no rights to interest.[119]  Chase released ATI under the Gonzalez Settlement, independently from the Plan prior to confirmation.[120]  Even if default occurred – post-confirmation payment cured default leaving no impairment under the Settlement or § 1124(a)(2).

### III.    SPECIFIC ARGUMENTS – RESPONDING TO APPELLEES' BRIEF

A.    <u>Waiver of Findings Issues:</u>  Chase/Trustee argues the Committee failed to

---

[114] Bankr. Doc. 1459 - Plan, p. 24 ¶ 3.3(a).  Bankr. Doc. No. 1526 - Plan-Hearing TR, December 9, 2011, p. 37 lns. 2-25 noting that settlement terms are not altered under the plan.  TR p. 38 lns. 9-12.

[115] Bankr. Doc. No. 1251-1 - Chase Settlement, p. 3 ¶ IIA.1 (ROA.1450046.1521).

[116] Bankr. Doc. No. 113 - Cash Collateral Order, pp. 14-15 ¶¶ 35-36 (USCA5.306-350).

[117] Bankr. Doc. No. 113 – Cash Collateral Order (USCA5.306-350).

[118] Appellees' Brief, p. 43 ¶ VIII.c.

[119] Appellees' Brief, p. 38 ¶ VII.

[120] Bankr. Doc. No. 1456 - Gonzalez Settlement (ROA.14.50046.1541-1556).

raise claim/valuation objections.[121]  The Committee appealed the claims and valuation

orders[122] designated issues referenced Bankruptcy Court's findings on claim/value

objections.[123]  The Committee argued that findings "failed to provide a clear

understanding of the process by which the Court's value conclusions were

obtained."[124]  Specifically, the Committee asserts:

> The Court rendered its two page finding – primarily touting the virtues of
> settlement – ignoring overwhelming evidence fixing the secured value of
> Chase's claims and determining that overpaying Chase by $5-$7 Million
> outweighed rights of the unsecured creditors.  Judge Akard erred by
> finding Chase to be "oversecured" without providing a factual basis for
> that conclusion. . . .[125]

Chase's waiver arguments are unfounded.

B.    <u>Constitutionally Moot:</u>    Trustee/Chase argue value issues are

constitutionally moot, resulting from the Settlement, citing, *Doe v. Veneman,* 380 F.3d

807 (5th Cir. 2004),[126] forgetting that the Committee filed value and claims objections,

concurrently set for hearing and presented to the Court with the Settlement, and that

the Court entered orders denying those objections.[127]  Constitutional moot concepts

are inapplicable to matters presented, tried and ruled upon, resulting in dispositive

---

[121] Appellee's Brief, p. 43 – 44.

[122] Appellant's Brief, p. 1.

[123] Appellant's Brief, p. 1 ¶ I – II.

[124] Appellant's Brief, p. 8 ¶ 6.4

[125] Dist. Doc. No. 30, Appellant's Reply Brief, p. 9 ¶ D 1.9 (ROA.14-50046.1170).

[126] Appellees' Brief, p. 43 ¶ VIII.C.

[127] Bankr. Doc. No. 1361 – Order Denying Committee's Objection to the Claims of Chase Capital
Corporation (the "Claim Objection Order") (USCA5.612); Bankr. Doc. No. 1358 – Order Regarding
the Application to Value the Secured Claim of Chase under Bankruptcy Code § 506(a) and (b) (the
"Valuation Order") (USCA5.618-608).

orders. Cases cited by Chase/Trustee apply where issues are no longer live or parties lack cognizable interests. *Doe v. Veneman,* 380 F.3d 807, 814 (5th Cir. 2004).

     C.   <u>Waiver of Plan Issues:</u>  Trustee/Chase contend that the District Court's condensed consideration of Plan issues was waived.[128] The Committee appealed the Confirmation Order and designating issues under §§ 1129(a), 1129(a)(1), 1129(a)(7), and 1129(b), arguing the Plan is not fair since it pays Chase in excess of its secured claim under § 506(a) and (b) violating §§ 1129(a)(1), (a)(7) and (b)(2).[129] The Committee argued that the Plan "is not fair and equitable"[130] and was confirmed without an impaired class.[131] The Committee's brief addressed "the court's independent duty to determine confirmation requisites under § 1129(a)."[132] Chase/Trustee waiver arguments have no merit.

     D.   <u>Working Asset Value:</u>  Chase/Trustee do not dispute J.P. Morgan lien on $4.8 Million in working capital sales proceeds, claiming instead that subsequent sale of the Redfish Bay assets – elevated Chase's rights to $4.8 Million,[133] requiring the Court to:

          i.     Ignore the Cash Collateral Order, directing working capital assets into AGE accounts, controlled by J.P. Morgan, applying those

---

[128] Appellees' Brief, p. 45 ¶ VIII.D.

[129] Dist. Doc. No. 28 - Appellant's Brief, p. 2 ¶ III 3.1 (ROA.14-50046.895).

[130] Dist. Doc. No. 28 - Appellant's Brief, p. 8 ¶ 6.3 (ROA.14-50046.901); Bankr. Doc. No. 1526 - TR December 9, 2011 pp. 43-49.

[131] Dist. Doc. No. 28 - Appellant's Brief, p. 8 ¶ 6.3 (ROA.14-50046.901).

[132] Dist. Doc. No. 30 - Appellant's Reply Brief, p. 10 ¶ E.1.10 (ROA.14-50046.1171).

[133] Appellees' Brief, pp. 46 – 47 ¶ VIII.E.

funds to J.P. Morgan indebtedness;[134]

ii.      Ignore the Refinery Sale Order attaching liens of J.P. Morgan to working capital and directing payment to Chase from $36 Million in fixed asset proceeds – not working capital.[135]

iii.     Ignore evidence showing $12 Million cash within AGE accounts and $8.1 Million in escrow,[136] $5.1 Million was transferred into AGE accounts on April 28, 2011,[137] and $7 Million to partially pay J.P. Morgan, leaving a loan balance and first lien of $5.6 Million attaching to working capital proceeds;

iv.     Ignore case law fixing collateral value upon the Refinery Sale closing on April 19, 2011,[138] that working capital proceeds of $4.8 Million were subject to the J.P. Morgan $11.817 debt on closing.

v.     Ignore *T-H New Orleans* concepts[139] – determining collateral value upon sale/closing.

vi.     Ignore that Redfish Bay assets were not encumbered by Chase liens and that working capital deposit were sufficient to pay J.P.

---

[134] Bankr. Doc. No. 113 – Cash Collateral Order (USCA5.306-350).
[135] Bankr. Doc. No. 913 – Refinery Sale Order (USCA5.1506-1593).
[136] Committee Tr. Exs. 12 and 15.
[137] Bankr. Doc. No. 1019 – Trustee's Notice of Finalization of Working Capital Adjustment, p. 2 ¶ 2.
[138] Bankr. Doc. No. 921 – Trustee Notice of Closing of Sale of Refinery (USCA5.1594-1595).
[139] *T-H New Orleans, Id.*

Morgan debt upon closing.[140]

E.   <u>Tank Farm Allocated Value:</u>   Chase/Trustee contend the Committee

reargues the Tank Farm collateral value.[141]   Committee arguments distinguish fair

market value from "allocated value."   Testimony confirmed the $41 Million refinery

sale exceeded fair market value by 39%.[142]   The APA required parties to allocate sales

proceeds.[143]   NuStar allocated $4 Million for the Tank Farm.[144]   Consequently, $4

Million is the Tank Farm sale value, to be deducted from sales proceeds to determine

Chase collateral value. [$41 Million minus $4 Million (Tank Farm allocated value)

minus $1.949 Million (Adjacent Property stipulated value) = $35.05 Million.]

Applying fair market value to the Tank Farm, then assigning net proceeds to refinery

value attributes the above market results to only Chase collateral – crediting $2.7

Million Tank Farm increased value ($4 Million Allocated - $1.3 FMV = $2.7 Million)

to Chase.

F.   <u>Chase's Erroneous Value Calculations:</u>   Chase demonstrations using

post-settlement recoveries to prove an oversecured position fails by incorporating the

$4.8 Million in working capital proceeds, subject to J.P. Morgan liens.[145]   Chase's

---

[140] Committee Tr. Exs. 12 and 15 showing cash deposits and J.P. Morgan debt.

[141] Appellees' Brief, pp. 49-50 ¶ VIII.B.

[142] Bankr. Doc. No. 911 - Affidavit of Michael Schmidt (USCA5.1497-1505).

[143] Bankr. Doc. No. 913 – Refinery Sale Order – Ex. A – Asset Purchase Agreement (USCA5.1508-1597).

[144] Bankr. Doc. No. 1426, TR October 27, 2011, pp. 258-65; Committee's Tr. Ex. 43 – Appraisal.

[145] Appellees' Brief, p. 52 ¶ VIII.E.

claims to collateral value attributable to J.P. Morgan contradicts Cash Collateral/Refinery Sale Orders. Without working capital proceeds, Chase is undersecured.

G. __The District Court's Findings:__ Trustee/Chase argue that District Court's statements were made in the context of the Settlement and not directed to value considerations.[146] Chase/Trustee ignore the Valuation Order, expert testimony and the Refinery Sale Order, specifically fixing collateral value of sold assets, contending that the District Court's rulings were directed to the Settlement and not value. The District Court "boiled down" all issues, comingling facts and legal concepts, making it difficult to comprehend its precise focus. Regardless of the uncertainty, its conclusions that $42.2 Million was the "most conservative Committee valuation" and value findings did focus upon value issues and were clearly erroneous.

H. __The District Court May Not Make Findings:__ That is the precise point. The District Court sitting on appeal is to review the lower court's findings – not make additional findings.[147] That's not what occurred. The Bankruptcy Court failed to make valuation findings or to explain its rational approving the Settlement, simply determining Chase to be oversecured, providing no reasoned foundation. The District Court stepped into the Bankruptcy Court's shoes engaging in analysis to justify the

---

[146] Appellees' Brief, p. 53 ¶ VIII.F.

[147] *In re Muncrief,* 900 F.2d 1220 (8th Cir. 1990); *Hall v. Vance,* 887 F.2d 1041 (10th Cir. 1989), holding that District Courts may not disturb a Bankruptcy Court's findings.

Settlement and making value conclusions. The District Court is not free to view evidence differently from the Bankruptcy Court. *In re Block Shim Development Company-Irving,* 118 B.R. 454, 453 (N.D. Tex. 1990). A reviewing court may assume the court impliedly made findings in support of general holding, if implied findings are supported by evidence. *In re Texas Mortgage Services Corp.,* 761 F.2d 1068 n.9 (5th Cir. 1985), citing, *Clinkenbeard v. Central Southwest Oil Corp.,* 526 F.2d 649, 651-52 (5th Cir. 1976). Judge Akard's oversecured ruling failed to include actual or implied findings.[148] Nonetheless the District Court found Chase collateral value exceeded $40.2 Million,[149] that "Committee value" was $42.2 Million,[150] attributed working capital to Chase, determined that J.P. Morgan liens were paid,[151] that $4.8 Million was paid after the Redfish Bay Sale,[152] that Chase lien attached to $39.85 or $42.5 Million on the Refinery Sale date, and that Trustee, not Chase released the ATI claim – all of which overstepped applicable jurisdictional limits.[153]

I.    Chase Does Not Dispute Diminution Arguments: Chase/Trustee neglect the Committee's arguments challenging Judge Akard's findings comparing the Settlement with "rewards of litigation" arising out of Chase's oversecured/diminution

---

[148] Bankr. Doc. No. 1367 – TR November 1, 2011, pp. 31-34.
[149] Dist. Doc. No. 33 - Memorandum, p. 10 (ROA.14-50046.1207).
[150] Dist. Doc. No. 33 - Memorandum, p. 13 (ROA.14-50046.1210).
[151] Dist. Doc. No. 33 - Memorandum, p. 11 n 7 (ROA.14-50046.1208).
[152] Dist. Doc. No. 33 - Memorandum, p. 11 n. 7 (ROA.14-50046.1208).
[153] Dist. Doc. No. 33 - Memorandum, p. 12 (ROA.14-50046.1209).

claims.[154] Chase/Trustee did not respond to Appellant's proof disproving diminution – noting that Chase refinery value increased and that working capital grew. Rather, Appellees assert waiver[155] ignoring the specific content of the Committee's briefs.[156]

       J.      <u>Appellees argue that the Redfish Bay Order is final:</u>[157] Appellees fail to rationalize the Refinery Sale Order or Cash Collateral Orders allocating sales proceeds to pay J.P. Morgan – instead focusing on the subsequent Redfish Bay Order, which, must be viewed in context of those prior orders. Appellees also ignore the Chase Payment Order[158] preserving all issues concerning Chase collateral value and payment – notwithstanding payment of Chase's prepetition debt.

## CONCLUSION

       The Bankruptcy Court's approval of the Settlement/Plan are clearly erroneous constituting clear abuse of discretion. Finding that Chase is oversecured and the Settlement/Plan to be fair are not supported by appropriate findings or consistent with evidence, prior orders or case precedent, confirming a clear abuse of discretion. Determinations of impairment constitute clear error. The Plan is not fair and equitable when it overpays Chase. Consequently:

            i.      The District Court's judgment is erroneous due to its failure to

---

[154] Dist. Doc. No. 28 - Committee's Brief, p. 6 ¶ VI. 6.1 (ROA.14-50046.899).
[155] Appellees' Brief, p. 55.
[156] Dist. Doc. No. 30 - Reply Brief, pp, 7-8 ¶ C.1.7 (ROA.14-50046.1168-1169).
[157] Appellees' Brief, pp. 46-47 ¶ VIII.E.
[158] Bankr. Doc. No. 1109 – Order Authorizing Payment of Chase – holding that payment was without prejudice to value objections.

address all issues on appeal by making excessive findings requiring remand.

ii.    Alternatively, the Bankruptcy Court and the District Court judgments approving the Settlement/Plan are clearly in error – demonstrating an abuse of discretion and manifest injustice – requiring reversal.

DATED this 16th day of June, 2014.

Respectfully submitted,

**MARTIN & DROUGHT, P.C.**
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, Texas  78205-3789
(210) 227-7591 / (210) 227-7924

/s/Michael G. Colvard
By:_____
MICHAEL G.  COLVARD
State Bar No. 04629200
**ATTORNEYS FOR APPELLANT**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Brief of Appellants was mailed, regular United States mail, and sent via e-mail to the following parties on June 16, 2014.

David S. Gragg
Steven R. Brook
Natalie F. Wilson
Langley & Banack, Inc.
745 East Mulberry, Suite 900
San Antonio, TX 78212

Toby L. Gerber
Norton Rose Fulbright
2200 Ross Ave., Suite 2800
Dallas, TX  75201-2784

Steve A. Peirce
Norton Rose Fulbright
300 Convent Street, Ste. 2100
San Antonio, TX 78205-379

/s/Michael G. Colvard

_____
MICHAEL G.  COLVARD

## CERTIFICATE OF COMPLIANCE

(PLACE THIS AS LAST DOCUMENT IN BRIEF BEFORE THE BACK COVER)

Pursuant to 5TH CIR. R. 32.2.7(c), the undersigned certifies this brief complies with

the type-volume limitations of 5TH CIR. R. 32.2.7(b).

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH CIR. R. 32.2.7(b)(3),

   THE BRIEF CONTAINS (select one):

      A.    6,939 words, OR

      B.    \_\_\_\_\_ lines of text in monospaced

   typeface.

2. THE BRIEF HAS BEEN PREPARED (select one):

      A.    <u>XX  </u>in proportionally spaced typeface using:
           Software Name and Version: Microsoft Word 2003 (11.8328.8329) SP3
           in (Typeface Name and Font Size): Times New Roman 14, OR

      B.    in monospaced (nonproportionally spaced) typeface using:
           Typeface name and number of characters per inch:
           _____

3. IF THE COURT SO REQUESTS, THE UNDERSIGNED WILL PROVIDE AN
ELECTRONIC VERSION OF THE BRIEF AND/OR A COPY OF THE WORD OR
LINE PRINTOUT.

4.    THE    UNDERSIGNED    UNDERSTANDS    A    MATERIAL
MISREPRESENTATION  IN  COMPLETING  THIS  CERTIFICATE,  OR
CIRCUMVENTION OF THE TYPE- VOLUME LIMITS IN 5TH CIR. R. 32.2.7,
MAY RESULT IN THE COURT's STRIKING THE BRIEF AND IMPOSING
SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

                         /s/Michael G. Colvard
                         Michael G. Colvard